**Russell GOODMAN, petitioner, Appellant,**

v.

**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, Respondent.**

No. 49157.

Supreme Court of Minnesota.

Aug. 3, 1979.

William L. Tilton, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before SHERAN, C. J., TODD and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

This is an appeal by Russell Goodman from the dismissal of his petition for reinstatement of his driver's license, which was suspended for failure to pay parking tickets. We affirm.

Goodman received six parking tickets for overtime parking at the State Capitol Complex between February, 1975, and September, 1977. He paid none of these. On March 6, 1978, he appeared in municipal court and was fined $120 for nonpayment of the six tickets, an amount which the court determined he was financially able to pay. When he indicated his continued refusal to pay, the court impounded his driver's license and forwarded it to the Department of Public Safety along with an order to suspend the license for nonpayment of the fine. Pursuant to this order and under the authority of Minn.St. 171.16, subd. 3, the Commissioner of Public Safety suspended the license "until fines paid."

After 30 days Goodman sought to have his license returned and, upon refusal, filed a petition for reinstatement in district court. The district court dismissed the petition on June 8, 1978, and this appeal followed.

The issue in this case is the interpretation of Minn.St. 171.16, subd. 3, which states:

"When any court reports to the commissioner that a person: (1) has been convicted of violating a law of this state or an ordinance of a political subdivision which regulates the operation or parking of motor vehicles, (2) has been sentenced to the payment of a fine only, and (3) has refused or failed to comply with the sentence notwithstanding the fact that the court has determined that the person has the ability to pay the fine, *the commissioner shall suspend the driver's license of such person for 30 days for a refusal or failure to pay or until notified by the court that the fine has been paid.*" (Emphasis added)

Goodman contends that the emphasized language imposes a 30-day maximum on license suspensions under this section. The state maintains that the statute allows the court a choice between ordering a 30-day suspension or a suspension until the fine is paid.

■ There is no doubt that the statute on its face is thoroughly ambiguous. Neither interpretation could be termed unreasonable, and the context or circumstances surrounding passage of the statute appear to provide no clue to legislative intent. Our practice when faced with such ambiguity is to accord substantial consideration to the interpretation of the administrators working daily with the problem sought to be remedied. *In re Estate of Raynolds,* 219 Minn. 449, 18 N.W.2d 238 (1945); *Knopp v. Gutterman,* 258 Minn. 33, 102 N.W.2d 689 (1960); *Mankato Citizens Telephone Company v. Commissioner of Taxation,* 275 Minn. 107, 145 N.W.2d 313 (1966).

■ The current administrative procedure is apparently for the municipal courts to transmit a standard order for an indefinite suspension, as in this case, and for the Commissioner to withhold the license until the fine is paid. In effect then, the alternative of a 30-day suspension is seldom, if ever, adopted. Nevertheless, this seems a reasonable method of inducing payment of obligations incurred by repeatedly ignoring local parking regulations on the part of those who have been expressly found able to pay their fines. Therefore, we hereby uphold the administrative interpretation. Should the legislature disagree, within a few months a change could readily be implemented.

Goodman has offered nothing which demonstrates that the administrative practice is unfair or not in conformity with legislative intent. He reasons that it is unduly harsh that he lose his right to drive indefinitely for six parking tickets. This ignores the fact that it is within his power to end the suspension at any time. Suspension is not a sanction for overtime parking, it is a method of inducing the payment of a legitimate obligation.

Goodman's explanation of the legislative history is similarly unsound. He points out that a bill identical to the statute under consideration here, except that the suspension was clearly to be until the fine was paid, was passed by the legislature in regular session in 1971, but vetoed by the Governor.[1] In the 1971 special session the current statute, with the inclusion of the "30 days" language, was passed. Goodman interprets this as an indication that the legislature changed its intent in order to produce a statute acceptable to the Governor. Therefore, it is argued, an indefinite suspension now contravenes the legislative intent to transform the vetoed language by adding a 30-day limitation. We disagree. Aside from the fact that comparisons with unsuccessful legislation are always of dubious validity, in this case the two statutes encompassed many subjects beyond the single section at issue here, and there are numerous discrepancies between the two. Consequently, it is impossible to know which of the original provisions motivated the Governor's veto and whether the legislature was necessarily repudiating its original intent.

Because of our holding on this issue, there is no need to consider Goodman's second claim that his fine should be vacated after a 30-day suspension.

Affirmed.

---

1. The vetoed bill was H.F. 257. Section 24, subd. 3, provided:

"When any court shall report to the commissioner that any person has been convicted of violating any law of this state, or ordinance of a political subdivision regulating the operation of motor vehicles, has been sentenced to the payment of a fine only and has refused or failed to comply with that sentence the commissioner shall suspend the driver's license of such person until notified by the court that the fine has been paid."