KOLTHOFF, ADMX., APPELLEE, *v.* KOLTHOFF ET AL., APPELLEES; CASSIDY, APPELLANT.

(No. 1136—Decided December 2, 1946.)

*Mr. D. W. Myers* and *Mr. Steven W. Kormendy,* for appellee Rosanna Kolthoff, administratrix.

*Miss Mary E. Anderson* and *Messrs. Wilcox & Wilcox,* for appellant.

STEVENS, J.   There was filed in the Probate Court of Lorain county, by plaintiff administratrix, an action for a declaratory judgment concerning certain assets of the estate of her decedent.   Upon hearing, the matter

was resolved by the Probate Court, which, in its journal entry, stated: "This matter came on for hearing upon the petition of the plaintiff for a declaratory judgment, and the evidence * * *."

An appeal on questions of law and fact was then taken to the Court of Common Pleas, in which court a motion to dismiss the appeal on law and fact was made by defendants because of a claimed lack of jurisdiction in the court to hear and consider the appeal, for the reason that the journal entry in the Probate Court did not recite that a record had not been taken at the hearing before the Probate Court, so that a bill of exceptions or a complete record could be prepared as provided by law in Courts of Common Pleas.

The Court of Common Pleas overruled the motion to dismiss, allowed certain amendments to be made to the petition, heard the case *de novo* on the evidence, and ruled adversely to the defendant-appellant. This appeal on questions of law followed.

Two questions are presented for determination by this court:

1. Was the action properly appealable from the Probate Court to the Common Pleas Court?

2. If so, was the Common Pleas Court's determination of the issue made under Section 10503-5, General Code, correct?

Section 10501-56, General Code, provides:

"* * * If, for any reason, a record has not been taken at the hearing of any matter before the Probate Court so that a bill of exceptions or a complete record may be prepared as provided by law in Courts of Common Pleas, then an appeal on questions of law and fact may be taken to the Court of Common Pleas by a person against whom it is made, or whom it affects, from any order, decision, or judgment of the Probate Court in the manner provided by law for the prosecution of

such appeal from the Court of Common Pleas to the Court of Appeals. The Court of Common Pleas shall advance said matter for hearing.''

It is a well-recognized rule that a court speaks through its journal, and the journal entry of the Probate Court in this action states: ''This matter came on for hearing upon the petition of the plaintiff for a declaratory judgment, *and the evidence* * * *.'' (Italics ours.)

The Common Pleas Court had before it the journal entry of the Probate Court, as well as the notice of appeal filed in the Probate Court, which notice asserted that ''No record has been taken of the hearing of any matter before the Probate Court, so that a bill of exceptions or complete record may be prepared in this proceedings * * *.''

From the journal entry, which specified that the matter had been heard ''upon the evidence,'' the Common Pleas Court was required to conclude that evidence had been introduced in the Probate Court, and the notice of appeal showed that at least the appellant claimed no record had been taken.

There is no statutory requirement that absence of the taking of a record be made to appear in the journal entry of the Probate Court, and from such omission we think it reasonable to conclude that the Legislature intended no such requirement.

There was before the Common Pleas Court a document (the notice of appeal) which stated that no record had been taken, which, in the presence of a motion to dismiss for want of jurisdiction, warranted the Common Pleas Court in exploring the question further by way of evidence, so that it might intelligently pass upon the motion to dismiss.

But entirely aside from that right, there was no record presented to the Court of Common Pleas in a

proceeding wherein the Probate Court, by its journal, had stated that the matter was heard "upon the evidence."

In the absence of an amendment of the journal entry of the Probate Court, the Court of Common Pleas was entirely justified in concluding that evidence had been introduced before the Probate Court, and that no record had been taken, and its overruling of the motion to dismiss was not error.

The appeal on law and fact was properly taken, and the allowance of the amendment to the petition, on application duly made, was entirely within the sound judicial discretion of the Court of Common Pleas, which we find not to have been abused.

The second question concerns the manner of distribution of $3,700, which was on deposit in the name of Philip Opper at the time of his death. Did it pass, under Section 10503-5, General Code, to the heirs of his wife, as well as to his heirs, or to the heirs of Philip Opper alone, he having died intestate?

Concededly, Philip Opper received from the estate of his deceased wife $3,700, in three different amounts: July 2, 1943, $900; July 2, 1943, $2,300; July 6, 1943, $500. These three amounts, either by transfer of credits or deposit, came to rest in a savings account in the name of Philip Opper, and so stood at the time of his death intestate.

If Section 10503-5, General Code, has application, then this $3,700 is distributable to the heirs of his wife as well as to his heirs. If it does not apply, then said sum goes to his heirs alone.

The rule with reference to the applicability of Section 10503-5, General Code, is stated by the Supreme Court of Ohio in *Wilson* v. *Eccles,* 119 Ohio St., 184, 162 N. E., 797, as follows:

"Section 8577 [present Section 10503-5], General Code, has application only to the identical property

which comes to an intestate from a former deceased husband or wife and has no application to property acquired by such intestate after death of such former deceased husband or wife even though such property is purchased from the proceeds of property coming from such former deceased husband or wife or is the increase or accumulations of such property."

Was the $3,700 savings account of Philip Opper the identical property which he received from the estate of his deceased wife?

The answer is obviously "no," for deposits, whether savings or commercial, received by a bank from a depositor, in the absence of an agreement to the contrary, become the property of the bank and give rise to a relationship of debtor and creditor between them. *Smith et al., Trustees,* v. *Fuller,* 86 Ohio St., 57, 99 N. E., 214, L. R. A. 1916C, 6, Ann. Cas. 1913D, 387. Hence, Philip Opper was a creditor of the bank, having owing to him an obligation which the bank could and was required to pay in accordance with its regulations, to which Opper subscribed when he placed his money in a savings account.

His claim was not against specific money held by the bank, but against its commingled assets.

There was no identity of what he received and what he left at his death.

The section (10503-5, General Code) had no application under the facts of this case, and the Common Pleas Court correctly resolved that question.

*Judgment affirmed.*

WASHBURN, P. J., and DOYLE, J., concur.